UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WHITLEY MANUFACTURING CO., INC., *et al.*,<br><br>　　　　　Defendants. | CASE NO. C13-1690RSL<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on "Plaintiff's Motion for Summary Judgment on Whitley Evergreen, Inc. Liability" (Dkt. # 46) and Whitley Evergreen's cross-motion (Dkt. # 54). Plaintiff alleges that defendant violated the Clean Water Act ("CWA") by discharging stormwater associated with its industrial activities into navigable waters of the United States without a permit. Both parties seek judgment regarding defendant's liability for unpermitted discharges occurring between July 20, 2008, and March 25, 2014.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT

parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

To establish liability for an unpermitted discharge under the CWA, plaintiff must show that defendant (1) discharged (2) a pollutant (3) to navigable waters (4) from a point source (5) without permit authorization. Headwaters, Inc. v. Talent Irrigation Dist., 243 F.3d 526, 532 (9th Cir. 2001). Defendant does not dispute that it discharged stormwater to navigable waters from a point source without permit authorization, but argues that plaintiff has failed to show that the stormwater discharged from defendant's facility is a "pollutant."

"Pollutant" is defined in the CWA as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6). Until the mid-1970s, the Environmental Protection Agency ("EPA") attempted to exempt stormwater (and certain other types of point-source discharges) from regulation under the CWA because it had trouble distinguishing between point-

source and nonpoint-source discharges and because it was overwhelmed trying to regulate the vast number of sources throughout the country. <u>Decker v. Nw. Envtl. Def. Ctr.</u>, __ U.S. __, 133 S. Ct. 1326, 1331-32 (2013); <u>Ecological Rights Found. v. Pac. Gas and Elec. Co.</u>, 713 F.3d 502, 505 (9th Cir. 2013). When the D.C. Circuit found the exemptions unlawful (<u>Nat. Res. Def. Council, Inc. v. Costle</u>, 568 F.2d 1369, 1377 (D.C. Cir. 1977)), the EPA issued new regulations attempting to clarify which discharges were point sources subject to CWA regulation. In 1987, Congress stepped in and required permits for stormwater discharges emanating from presumptively dirty sources, such as large municipalities, previously-permitted sources, and "industrial activity." 33 U.S.C. § 1342(p)(2); <u>Ecological Rights Found.</u>, 713 F.3d at 505. Congress expressly excluded these sources from the general exemption granted to "discharges composed entirely of stormwater" and categorically required National Pollutant Discharge Elimination System ("NPDES") permits for stormwater discharges "associated with industrial activity." <u>Decker</u>, 133 S. Ct. at 1336.

The EPA subsequently defined "stormwater discharge associated with industrial activity" to capture those discharges reasonably expected to come into contact with industrial activities. The definition specifically includes stormwater discharges from manufacturing buildings, material handling sites, storage areas, and accompanying yards and access roads. 40 C.F.R. § 122.26(b)(14). In addition, facilities that fall within certain Standard Industrial Classifications ("SIC") are considered to be engaged in "industrial activity." Defendant does not dispute that stormwater from its facility is a "discharge associated with industrial activity" that requires an NPDES permit.

In Washington, stormwater discharge from industrial facilities is generally permitted under the state's Industrial Stormwater General Permit ("ISGP"). The ISGP provides standards for prevention, control, and treatment of discharges, imposes sampling and reporting requirements, and specifies escalating corrective actions if a

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT            -3-

1 facility's discharge exceeds certain benchmark levels of contaminants. If, despite being
2 associated with an industrial activity as defined in the regulations, stormwater is not
3 actually exposed to industrial materials or activities, the facility may be able to obtain a
4 "conditional no exposure" ("CNE") exclusion from the permit requirement. Defendant
5 obtained a CNE on March 25, 2014. Prior to that date, defendant concedes that its
6 activities were not covered by an NPDES permit.

7 Defendant argues that, notwithstanding the fact that its stormwater discharges are
8 "associated with industrial activity" and therefore require a permit under the CWA,
9 plaintiff's claim fails because there is no private cause of action to enforce § 1342(p)'s
10 permit requirement.[1] In the absence of a direct cause of action under § 1342(p), the
11 argument goes, plaintiff must show that defendant's stormwater discharge contained a
12 "pollutant" as that term is defined in § 1362(6) before it can establish a violation of the
13 CWA's prohibition against "the discharge of any pollutant." 33 U.S.C. § 1311. This
14 argument rests entirely on Envtl. Prot. Info. Ctr. v. Pac. Lumber Co., 469 F. Supp.2d
15 803, 826-27 (N.D. Cal. 2007), in which an environmental group sued two lumber
16 companies for CWA violations related to unpermitted sediment and pollutant discharges
17 into a local creek. The district court did not, however, determine whether proof of a
18 discharge of stormwater without the presence of additional contaminants constituted a
19 violation of the CWA: all of the discharges about which the plaintiff in that case
20 complained contained sediments or other pollutants, and the court declined to resolve
21 the issue. Id. at 826. The district court rejected plaintiff's 33 U.S.C. § 1311 claim on the
22 ground that plaintiff failed to show that the discharge locations at issue were point
23 sources and rejected plaintiff's 33 U.S.C. § 1342(p) claim because there was no private

---

[1] The citizen suit provision of the CWA authorizes a civil action against any person "who is alleged to be in violation of (A) an effluent standard or limitation under this chapter of (B) an order issued by the Administrator or a State with respect to such a standard or limitation . . . ." 33 U.S.C. § 1365(a)(1).

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT          -4-

1   cause of action for a failure to obtain a stormwater permit. The actual holdings of <u>Pac.</u>
2   <u>Lumber</u> do not support defendant's argument.

3         After a careful review of the statute, the parties' memoranda, and the cases cited
4   therein, the Court concludes that there is no private right of action under § 1342 and that
5   plaintiff must show that defendant discharged a pollutant in order to establish a violation
6   of § 1311. Contrary to defendant's argument, however, plaintiff need not prove that
7   defendant's stormwater contained a particular substance in a particular quantity because
8   Congress, in enacting § 1342(p), determined that defendant's stormwater is, in and of
9   itself, a pollutant. This conclusion is compelled by the statute. The CWA forbids the
10  discharge of pollutants into navigable waters unless the discharge is allowed by permit.
11  Under the statutory scheme, the obligation to obtain an NPDES permit is triggered only
12  where a pollutant is discharged from a point source. If a pollutant is not present, the
13  EPA lacks the authority to require a permit. See <u>Waterkeeper Alliance, Inc. v. U.S.</u>
14  <u>E.P.A.</u>, 399 F.3d 486, 505-06 (2nd Cir. 2005) ("[I]n the absence of an actual addition of
15  any pollutant to navigable waters from any point, there is no point source discharge, no
16  statutory violation, no statutory obligation of point sources to comply with EPA
17  regulations for point source discharges, and no statutory obligation of point sources to
18  seek or obtain an NPDES permit in the first instance.").[2]

19        Thus, in determining that the discharge of stormwater associated with industrial
20  activity requires a permit, Congress necessarily found that the stormwater itself is a
21  pollutant subject to regulation under the CWA. The weight of the relevant case law

---

[2] In <u>Waterkeeper</u>, the Second Circuit considered a rule requiring concentrated animal feeding operations ("CAFOs") to apply for an NPDES permit simply because they had the potential to discharge pollutants. The Second Circuit found that, absent an actual discharge, the duty to obtain an NPDES permit was not triggered and the EPA exceeded its authority under the statute by imposing such a duty. <u>Id.</u> at 504. In this case, however, it is Congress, not the EPA, that mandated that all stormwater discharges associated with industrial activity be permitted. Congress amended the CWA to impose on defendant the very obligations that did not exist in <u>Waterkeeper</u>, namely to comply with EPA regulations for point source discharges and obtain an NPDES permit.

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT    -5-

1 supports such a conclusion (Nat. Res. Def. Council, Inc. v. U.S. E.P.A., 966 F.2d 1292,
2 1304 (9th Cir. 1992) ("It is not necessary that storm water be contaminated or come into
3 direct contact with pollutants; only association with any type of industrial activity is
4 necessary."); N.C. Shellfish Growers Assoc. v. Holly Ridge Assocs., LLC, 278 F.
5 Supp.2d 654, 679 (E.D.N.C. 2003) ("[T]he Court believes that Defendants' ditching
6 activities fall within the EPA's definition of "industrial activity" . . . Stormwater
7 collected and conveyed by ditches on the Morris Landing Tract therefore qualifies as a
8 pollutant under the CWA.")), as does the history of the 1987 amendments to the CWA
9 (132 Cong. Rec. S. 16,424, 32,381 (1986) ("[S]torm sewers with discharges associated
10 with industrial activities are subject to the enforcement provisions of the act if they do
11 not have a section 402 permit); Hughey v. JMS Dev. Corp., 78 F.3d 1523, 1524-25
12 (11th Cir. 1996) (Congress enacted the Water Quality Act to force the EPA to regulate
13 stormwater, "focus[ing] their attention on the most serious problems first."). Even if the
14 definition of "pollutant" is strictly and narrowly construed to include only those items
15 specifically listed (a theory that does not have universal acceptance), Congress was well
16 within its discretion to clarify that the phrase "industrial, municipal, and agricultural
17 waste" includes stormwater that comes in contact with those materials.

18     The Court further finds that a letter addressed to "Whitely Manufacturing Co.,
19 Inc., d.b.a. Whitely Evergreen" and mailed to defendant's facility and its registered
20 agent in Washington provided the statutorily required notice of suit. Defendant makes
21 no attempt to explain what information it lacked or why the letter was insufficient to
22 allow it to identify the alleged violations and take remedial action. Klamath-Siskiyou
23 Wildlands Ctr. v. U.S. Forest Serv., 797 F.3d 645, 651 (9th Cir. 2015).

24
25
26

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT          -6-

1  For all of the foregoing reasons, plaintiff's motion for partial summary judgment
2  (Dkt. # 46) is GRANTED. Defendant Whitley Evergreen, Inc., had unpermitted
3  discharges in violation of the CWA on 208 days between July 20, 2008, and March 25,
4  2014.

6  Dated this 9th day of November, 2015.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge